IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Christine M. Arguello

Criminal Action No. 17-cr-00358-CMA

UNITED STATES OF AMERICA,

    Plaintiff,

v.

JOSHUA OMAR GARCIA,

    Defendant.

---

**ORDER GRANTING DEFENDANT'S MOTION TO DISMISS**

---

This matter is before the Court on Defendant Joshua Garcia's Motion to Dismiss With Prejudice for Violation of the Sixth Amendment Right to Speedy Trial. (Doc. # 39.) The Government filed a Response[1] on May 4, 2020 (Doc. # 43), and Mr. Garcia filed a Reply[2] on June 16, 2020 (Doc. # 48). For the following reasons, the Court grants Mr. Garcia's Motion.

### I.     BACKGROUND

On July 3, 2017, Mr. Garcia was allegedly involved in a shoplifting incident at a Kmart store in Aurora, Colorado. When he exited the store, Mr. Garcia was confronted

---

[1] The Court notes that the Government requested a hearing on the instant Motion. (Doc. # 43 at 1.) However, the Court has determined that a hearing would not materially assist in the determination of the Motion.

[2] Defense counsel did not seek additional time to file a Reply. Defense counsel is advised that late filings may be either stricken or not considered without a proper motion for an extension of time.

by Kmart employees who had been surveilling him while he was inside. During his interaction with the employees, the Government asserts that Defendant brandished—and subsequently discharged—a firearm before fleeing the scene. On September 27, 2017, a federal grand jury returned a three-count indictment against Mr. Garcia. The indictment, which was filed under seal, pertained solely to the events at Kmart on July 3, 2017. (Doc. # 1.)

After Mr. Garcia departed the Kmart premises on July 3, 2017, he was not apprehended until July 5, 2017. During the course of his apprehension, Mr. Garcia allegedly discharged a firearm at law enforcement officers. (Doc. # 43 at 3.) Based on the events of July 5, 2017, the Adams County District Attorney's Office filed a complaint against Mr. Garcia on July 11, 2017. (*Id.* at 4.)

The federal indictment remained sealed for almost two years while Mr. Garcia's criminal case proceeded in Colorado state court. Mr. Garcia ultimately pled guilty to some of the state charges, and he was sentenced to 23 years imprisonment on August 16, 2019. (*Id.* at 5.) On August 20, 2019, the federal indictment was unsealed, and Mr. Garcia made his initial appearance in federal court after officers arrested him pursuant to an outstanding warrant and a Motion for Writ of Habeas Corpus Ad Prosequendum that the Government filed in this Court on August 15, 2019. *See* (Doc. ## 3–7).

## II.     LEGAL STANDARD

The Sixth Amendment guarantees that "[i]n all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial." U.S. Const. amend. VI. "[A]lthough the right is somewhat amorphous, the remedy is severe: dismissal of the indictment." *United*

*States v. Seltzer*, 595 F.3d 1170, 1175 (10th Cir. 2010). "[I]t is the prosecution's burden (and ultimately the court's) and not the defendant's responsibility to assure that cases are brought to trial in a timely manner." *Id*. at 1175–76.

In *Barker v. Wingo*, 407 U.S. 514, 530–32 (1972), the Supreme Court established a four-part balancing test to determine whether a delay in post-indictment proceedings violates a defendant's constitutional right to a speedy trial. The four factors are: "(1) the length of delay; (2) the reason for the delay; (3) the defendant's assertion of his right; and (4) prejudice to the defendant." *United States v. Medina*, 918 F.3d 774, 780 (10th Cir.) (quoting *United States v. Yehling*, 456 F.3d 1236, 1243 (10th Cir. 2006)), *cert. denied*, 139 S. Ct. 2706 (2019). "[N]o single factor is determinative or necessary, rather all four are considered to determine whether a violation has occurred." *Seltzer*, 595 F.3d at 1176. "*Barker*'s balancing test thus 'compels courts to approach speedy trial cases on an *ad hoc* basis.'" *Medina*, 918 F.3d at 780 (quoting *Barker*, 407 U.S. at 530).

### III.   DISCUSSION

Application of the *Barker* factors to the facts of this case demonstrates that Mr. Garcia's right to a speedy trial was violated. The Court will discuss each factor in turn.

**A.   LENGTH OF THE DELAY**

The first factor of the *Barker* test looks to the length of the delay in pursuing the case against the defendant. This is a double inquiry. First, "[s]imply to trigger a speedy trial analysis, an accused must allege that the interval between accusation and trial has crossed the threshold dividing ordinary from 'presumptively prejudicial' delay." *Seltzer*, 595 F.3d at 1176 (quoting *Doggett v. United States*, 505 U.S. 647, 651–52 (1992)).

3

Second, "[i]f the accused makes this showing, the court must then consider, as one factor among several, the extent to which the delay stretches beyond the bare minimum needed to trigger judicial examination of the claim." *Id*. (quoting *Doggett*, 505 U.S. at 652).

      1.    <u>Date Mr. Garcia's Sixth Amendment Rights Attached</u>

Because the court must determine whether the delay in this case is presumptively prejudicial, it follows that the Court must ascertain, as a preliminary matter, when Mr. Garcia's Sixth Amendment right to a speedy trial attached. The Tenth Circuit has explained that the right "attaches when the defendant is **arrested or indicted, whichever comes first**." *United States v. Larson*, 627 F.3d 1198, 1207 (10th Cir. 2010) (emphasis added).

In the instant case, the grand jury returned the indictment on September 27, 2017. (Doc. # 1.) The indictment was sealed until August 20, 2019, which is the same date Mr. Garcia was arrested. (Doc. # 7.) The Government argues that "[t]he triggering mechanism for computing delay in a case where the indictment is sealed is the date the indictment is unsealed." (Doc. # 43 at 6) (citation omitted). The Court disagrees.

The Tenth Circuit has not directly addressed when a defendant's speedy trial rights attach if an indictment is initially filed under seal. Other circuits are split on the issue. *See United States v. Williams*, 683 F. App'x 376, 383 (6th Cir. 2017) (recognizing circuit split). The Second Circuit has adopted the view for which the Government advocates, i.e., that a defendant's Sixth Amendment speedy trial rights are triggered "by

4

the unsealing of a sealed indictment . . . ." *United States v. Moreno*, 789 F.3d 72, 78 (2d Cir. 2015) (citing *United States v. Watson*, 599 F.2d 1149, 1156 (2d Cir. 1979)).

The First Circuit, on the other hand, rejected that view, noting that such a "bright line rule is inconsistent" with the balancing test that the Supreme Court established in *Barker*. *United States v. Casas*, 356 F.3d 104, 112 (1st Cir. 2004). In *Casas*, the court persuasively reasoned:

> **It is easy to imagine a situation where, by the time an indictment is unsealed, the defendant suffers prejudice**—important documents may be destroyed or key witnesses may die as a result of a delay caused by sealing the indictment. This is true whether the government's reasons for sealing the indictment are good or bad, *see United States v. Thompson*, 287 F.3d 1244, 1252–56 (10th Cir. 2002). The reasons for sealing may certainly be relevant to the analysis.
>
> We see no reason why a defendant should not be able to make a speedy trial claim when the government has delayed the trial by sealing the indictment, regardless of the government's reasons. Instead, we adhere to the *Barker* rule that these facts must be considered under the four-part inquiry. Prosecutors bear the primary burden of bringing a case to trial; **they may not hide behind the sealing of an indictment to avoid examination of the delay that they cause**.

*Id*. at 113 (emphasis added).

Although the Tenth Circuit has not squarely addressed this issue, it has excluded time from speedy trial calculations if, among other reasons, an indictment has been sealed before a defendant's arrest. Specifically, in *United States v. Hay*, 527 F.2d 990 (10th Cir. 1975), a grand jury returned an indictment on August 18, 1972, which was filed under seal. There, the defendant was not arrested until May 18, 1973, because: he traveled to Mali, Africa; the United States did not have an extradition treaty with Mali; and the State Department had to negotiate an agreement with Mali to have the

defendant "declared persona non grata," so that he would be forced to return to the United States. *Id*. at 993.

In determining when the defendant's speedy trial rights attached, the Tenth Circuit did not include the time from appellant's indictment to his arrest because he "was not available for prosecution and because none of the interests protected by the sixth amendment guarantee were endangered during this time." *Id*. In a footnote, the court explained that the defendant "was subject to neither restraints on his liberty nor public accusation before his arrest." *Id*. at 993 n.4.

However, courts have recognized that there has been an "evolution in speedy trial jurisprudence" since the Tenth Circuit's 1975 decision in *Hay*. *United States v. Leaver*, 358 F. Supp. 2d 255, 268 n.106 (S.D.N.Y. 2004). Specifically, in *Doggett v. United States*, 505 U.S. 647, 655 (1992), the Court held that a defendant's Sixth Amendment speedy trial rights are "triggered by arrest, indictment, or other official accusation," even if the defendant is unaware of the accusation.

Courts have observed that *Hay* and *Doggett* stand for inconsistent propositions. *See, e.g., United States v. Alvarado-Rico*, No. 14-cr-00464-PAB, 2020 WL 2128737, at *2 n.1 (D. Colo. May 5, 2020) (recognizing inconsistency); *Leaver*, 358 F. Supp. 2d at 268 n.106 (same). *Hay*, and other pre-*Doggett* cases reflect an interpretation of the Sixth Amendment that emphasizes protecting defendants from the "major evils" implicated by the Speedy Trial Clause, i.e., "anxiety to the accused and public obloquy." *Leaver*, 358 F. Supp. 2d at 268. *Doggett*, on the other hand, "makes it clear that the major purpose of the Sixth Amendment is to protect against **the impairment of the**

**accused's defense**." *Id*. (emphasis added); *see Doggett*, 505 U.S. at 647 ("The Government errs in arguing that the Speedy Trial Clause does not significantly protect a defendant's interest in fair adjudication.").

The Supreme Court's prioritization of a defendant's ability to present a defense strongly favors the First Circuit's position regarding the attachment of a defendant's Sixth Amendment rights when an indictment has been filed under seal. On this point, one of the First Circuit's observations in *Casas* bears repeating: "It is easy to imagine a situation where, by the time an indictment is unsealed, the defendant suffers prejudice—important documents may be destroyed or key witnesses may die as a result of a delay caused by sealing the indictment." 356 F.3d at 113. Notably, the Supreme Court categorized the same kinds of impairments of an accused's case as "the most serious" form of prejudice "because the inability of a defendant adequately to prepare his case skews the fairness of the entire system." *Doggett*, 505 U.S. at 654.

Consequently, because a defendant may be prejudiced in the ways that the Supreme Court considers to be "the most serious" due to the passage of time when an indictment is sealed, it follows that the Sixth Amendment speedy trial guarantee attaches when an indictment is filed, even if it is sealed. Accordingly, Mr. Garcia's rights attached when the sealed indictment was filed on September 27, 2017—twenty-three months before he was arrested. (Doc. # 1.)

  2. <u>Extent to Which Delay Exceeds Threshold Triggering Judicial Review</u>

Delays approaching one year generally satisfy the requirement of presumptive prejudice. *Doggett*, 505 U.S. at 652 n.1; *Jackson v. Ray*, 390 F.3d 1254, 1261 (10th Cir.

2004) ("four and one-third-year delay is clearly sufficient to require consideration of the remaining *Barker* factors."); *United States v. Batie*, 433 F.3d 1287, 1290 (10th Cir. 2006) (seventeen and one-half months was presumptively prejudicial); *United States v. Margheim*, 770 F.3d 1312, 1326 (10th Cir. 2014) (twenty-three months was presumptively prejudicial). In the instant case, as in *Margheim*, the twenty-three-month delay between the date the sealed indictment was filed and the date on which Mr. Garcia was arrested was presumptively prejudicial.

Once a defendant establishes presumptive prejudice, courts must examine "the extent to which the delay stretches beyond the bare minimum needed to trigger judicial examination of the claim." *Doggett*, 505 U.S. at 651–52. The Tenth Circuit has explained:

> This inquiry is relevant because the length of delay depends on "the peculiar circumstances of the case," *Barker*, 407 U.S. at 530–31, . . . and "the presumption that pretrial delay has prejudiced the accused intensifies over time," *Doggett*, 505 U.S. at 652 . . . . Thus, **less delay is tolerated for ordinary street crimes, and more delay for complex conspiracy charges.** *Barker*, 407 U.S. at 531 . . . . **The government should not have needed over seventeen months to prepare a case against [the defendant] for armed bank robbery and brandishing a firearm**. . . . Accordingly, the length of delay weighs in [the defendant's] favor.

*Batie*, 433 F.3d at 1290–91 (emphasis added).

If the Government in *Batie* should not have needed **seventeen months** to prepare a case against a defendant for armed bank robbery and brandishing a firearm, the Government certainly did not need **twenty-three months** to prepare a case against Mr. Garcia for similar charges. Thus, as in *Batie*, this factor favors Mr. Garcia.

### B.      REASON FOR THE DELAY

The Government has the burden "to present acceptable reasons for the delay." *Margheim*, 770 F.3d at 1326. In evaluating the second *Barker* factor, "different weights should be assigned to different reasons." *Barker*, 407 U.S. at 531. For instance,

> A deliberate attempt to delay the trial in order to hamper the defense should be weighted heavily against the government. A more neutral reason such as negligence or overcrowded courts should be weighted less heavily but nevertheless should be considered since the ultimate responsibility for such circumstances must rest with the government rather than with the defendant. Finally, a valid reason, such as a missing witness, should serve to justify appropriate delay.

*Id*. (footnote omitted).

Deferring a defendant's federal arraignment to allow another sovereign to conclude its prosecution may be a permissible reason for delay in some circumstances. *Seltzer*, 595 F.3d at 1178. However, waiting for another sovereign to complete its prosecution does not justify every delay, and "[t]he mere fact that the defendant was incarcerated on a previous charge for a portion of the delay does not by itself excuse the delay." *Id*. (citations omitted).

The Tenth Circuit has held that "[t]he government must make a particularized showing of why the circumstances require the conclusion of the state proceedings before the federal proceedings can continue." *Id*. Delaying a defendant's appearance in federal court to allow state proceedings to conclude is "more likely to tip the second *Barker* factor in favor of the government where (1) there is 'overlap in the charges or proceedings,' (2) 'concurrent proceedings would . . . be logistically cumbersome,' or

(3) the charges at issue are complex." *Medina*, 918 F.3d at 781 (quoting *Seltzer*, 595 F.3d at 1178).

In the instant case, the Government's only justification for the delay is that Mr. Garcia was involved in state court proceedings after the sealed indictment was filed in federal court. *See* (Doc. # 43 at 8). However, the Government has failed to show that the delay was necessary under the circumstances.

As a preliminary matter, the overlap between the federal and state proceedings was minimal. The federal indictment relates only to Mr. Garcia's alleged involvement in a shoplifting incident on July 3, 2017. The state charges, on the other hand, related only to an altercation between Mr. Garcia and law enforcement officers on July 5, 2017. The facts that the events have in common are: (1) Mr. Garcia's alleged involvement; and (2) Mr. Garcia allegedly possessed or discharged the same firearm on both occasions. Otherwise, the two proceedings are both factually and legally distinct.

Additionally, the logistics required to prosecute both cases simultaneously would not have been unduly burdensome. At worst, the firearm at issue would have to be transferred from one sovereign to the other, and Mr. Garcia would need to be transferred from one facility to another. Documenting the chain of custody transfers would cure the former; the latter could be accomplished with coordination between state and federal authorities. Neither factor outweighs Mr. Garcia's Sixth Amendment rights. Moreover, Mr. Garcia was being housed a mere 24 miles from the federal courthouse, *see* (Doc. # 48 at 7), such that transporting Mr. Garcia would not have been logistically

onerous. *Cf. Medina*, 918 F.3d at 789 (noting that concurrent proceedings would have been a "logistical ordeal" in part because the defendant was housed out-of-state).

Finally, the charges at issue are not complex. The operative facts involved in the instant case[3] are straightforward: Mr. Garcia allegedly shoplifted from a store and discharged a firearm that he was prohibited from possessing as he left the premises. *See Seltzer*, 595 F.3d at 1178 ("simplicity of the charges is also relevant . . . because it demonstrates the relatively light burden that proceeding with the federal prosecution would have imposed upon the government."). Although the Government frames the case as "not simple," (Doc. # 43 at 11), it is hard to imagine a fact pattern that is less complicated. *Cf. Medina*, 918 F.3d at 789 (charges were complex because they involved "multiple and different federal financial crimes that occurred in several states.").

To the extent it would have been merely inconvenient for the Government to try both cases at once, that inconvenience is outweighed by the simplicity of the instant case, and the extent to which the state and federal cases are distinct. *See Seltzer*, 595 F.3d at 1179 ("Although there is no evidence that the government intentionally delayed the case for the explicit purpose of gaining some advantage, the government still bears the burden of bringing a case to trial in a timely fashion, absent sufficient justification."). Therefore, this factor favors Mr. Garcia.

---

[3] The state court proceedings were not complex either. Although the Tenth Circuit has categorized murder cases as "inherently complex," *see Nixon*, 919 F.3d at 1272, Mr. Garcia was not charged with murder. Rather, he was initially charged with attempted murder and ultimately pled guilty to an assault charge. (Doc. # 48 at 9.) Moreover, the charges were based on events that were limited in scope and duration such that they were not complicated. *Cf. Medina*, 918 F.3d at 789.

### C. DEFENDANT'S ASSERTION OF HIS RIGHT

Courts "assign strong weight to the defendant's assertion of his constitutional speedy-trial right, but [courts] may weigh the frequency and force of his objections to the delay." *Margheim*, 770 F.3d at 1328 (quotations omitted). "[I]n general, the sooner a criminal defendant raises the speedy trial issue, the more weight this factor lends to his claim." *Jackson*, 390 F.3d at 1263. Additionally, "even when the defendant fails to invoke the right to a speedy trial, this factor might vary in importance depending on whether the defendant was represented or knew about the federal charge during the delay period." *Nixon*, 919 F.3d at 1272 (citing *Barker*, 407 U.S. at 529).

In the instant case, the attorney who was representing Mr. Garcia during the state court proceedings contacted the US Attorney's Office on May 17, 2019. The US Attorney's Office did not provide any details regarding the substance of the pending charges, but it did indicate that "the federal case would begin when the [state court] case ended." (Doc. # 39 at 12.) Mr. Garcia could not gain any additional information about the federal charges because the indictment was sealed.

In *United States v. Frias*, 893 F.3d 1268, 1273 (10th Cir. 2018), the court considered nearly identical circumstances. There, as here, the defendant's attorney had a conversation with an AUSA while state proceedings were ongoing. *Id*. As a result, the defendant had "general knowledge that charges were looming . . . ." *Id*. However, the Government "never actually made [the defendant] aware that charges existed." *Id*. The court ruled that it was "doubtful that [a defendant] could assert her speedy trial rights on

12

such a slender reed," and that the third *Barker* factor "slightly favored" the defendant as a consequence. *Id*.

As in *Frias*, Mr. Garcia only had a general impression that he could face federal charges, and he could not have gained any additional information because the indictment was sealed. *Cf. Nixon*, 919 F.3d at 1273 (concluding third *Barker* factor weighed against the defendant when the defendant "knew that he was being charged and could have obtained the indictment at any time" because the indictment was not sealed). Accordingly, as in *Frias*, this factor slightly favors Mr. Garcia.[4]

**D.     PREJUDICE TO THE DEFENDANT**

"The individual claiming the Sixth Amendment violation has the burden of showing prejudice." *United States v. Toombs*, 574 F.3d 1262, 1275 (10th Cir. 2009). Courts "assess prejudice in light of the interests that the speedy trial right was designed to protect." *Seltzer*, 595 F.3d at 1179. Specifically, courts consider: (1) the prevention of oppressive pretrial incarceration; (2) the minimization of anxiety and concern of the accused; and (3) minimization of the possibility that the defense will be impaired. *Id*. (citing *Toombs*, 574 F.3d at 1275).

---

[4] The Court notes that Mr. Garcia filed several motions for Ends of Justice Continuances in this case after he was arraigned. (Doc. ## 17, 20, 30.) The Government asserts that Mr. Garcia's decision to file those motions should be weighed against him with respect to the assertion of his right to a speedy trial. (Doc. # 43 at 12.) The Court disagrees. As Mr. Garcia points out in his Reply, "[u]nder the government's approach, a defendant would be forced to choose between either a) proceeding with a motion to dismiss due to a violation of speedy trial without requesting any continuances thus forgoing necessary investigation/research; or b) waiving the speedy trial violation issue by taking time to investigate/research." (Doc. # 48 at 16.) The Court will not hold meritorious requests for extensions of time against a defendant when those requests are necessary for defense counsel to adequately prepare for trial and draft pretrial motions.

"Of these interests, the most serious is the 'hindrance of the defense' because the inability of a defendant to adequately prepare his case skews the fairness of the entire system." *Id*. at 1179–80 (footnote omitted) (citing *Toombs*, 574 F.3d at 1275). "Because the seriousness of a post-accusation delay worsens when the wait is accompanied by pretrial incarceration, oppressive pretrial incarceration is the second most important factor." *Id*. at 1180 (quoting *Jackson*, 390 F.3d at 1264).

In the instant case, Mr. Garcia was prejudiced in at least two ways. First, the delay hindered his defense because relevant evidence was lost. During the nearly two years that the federal indictment was sealed, the Kmart that was the site of the alleged shoplifting incident closed. (Doc. # 39 at 7.) As a result, significant security footage of the incident is not available. (*Id.*)

Mr. Garcia argues that security footage of his departure from the Kmart premises would refute the Kmart employees' statements that Mr. Garcia pointed a firearm at them. (Doc. # 48 at 14.) The Government does not deny that surveillance video no longer exists. *See* (Doc. # 43 at 15–17). Rather, the Government asserts that no prejudice exists because facts related to Mr. Garcia's departure from the Kmart "can be presented through the testimony of the [employees] themselves," and that if Mr. Garcia "[has] questions regarding what happened inside/outside Kmart, he is free ask [the employees] on cross-examination." (*Id*. at 16, 17.)

The Government's position is, frankly, absurd. It goes without saying that eyewitness memories fade with time, while video evidence does not; this is significant because the events outside the Kmart took place years ago. Additionally, video

evidence objectively shows events as they occurred, whereas eyewitnesses are subject to issues such as faulty perception and bias.[5] Therefore, the impact of the loss of objective evidence that potentially resolves a dispute about a material fact cannot be understated. As a result, the loss of the surveillance video prejudiced[6] Mr. Garcia's defense, which is "the most serious" interest protected by a defendant's right to a speedy trial. *Seltzer*, 595 F.3d at 1179; *cf. United States v. Hicks*, 779 F.3d 1163, 1169 (10th Cir. 2015) (finding no prejudice existed in part because the defendant did "not argue that the delay resulted in the loss of specific evidence or the unavailability of certain witnesses.").

Second, Mr. Garcia experienced an unnecessarily prolonged period of pretrial incarceration. It is undisputed that a "federal detainer prevented [Mr. Garcia] from

---

[5] In *Medina*, the court determined that the defendant did not suffer prejudice due to lost evidence in part because the same evidence could have been derived from other sources. 918 F.3d at 791. In that case, the lost evidence was stored on a cell phone. *Id*. The court suggested that the evidence could have been replaced by other electronically stored data. *Id*. Thus, the lost evidence would have established the same factual assertion as the evidence that was lost. However, the court's reasoning with respect to adequate alternative sources of evidence cannot logically be extended to apply to eyewitness testimony as a substitute for surveillance video footage, especially when a defendant asserts the video footage would directly contradict the allegations in the indictment.

[6] In evaluating whether the loss of evidence during a delay amounts to prejudice, courts consider: "(1) the defendant's ability to demonstrate with specificity how the evidence would have aided his defense; (2) whether the government's delay in bringing the defendant to trial caused the evidence to be actually lost; and (3) whether the defendant took appropriate steps to preserve the evidence." *Medina*, 918 F.3d at 781–82. Mr. Garcia demonstrated with specificity that the lost evidence would have aided his defense because the evidence would resolve a factual dispute about whether he pointed a firearm at Kmart employees. Further, the loss is attributable to the Government's delay because it is likely that the video recordings would have been available as evidence if this case had been prosecuted promptly. Finally, "[t]he Government acknowledges that [Mr.] Garcia requested any additional footage from the Government" after the indictment became unsealed. (Doc. # 43 at 17.) Before the indictment was unsealed, however, Mr. Garcia did not have sufficient information about the crimes with he was charged to take any steps to preserve evidence.

bonding out in his state case." (Doc. # 43 at 13.) The Government argues that Mr. Garcia did not suffer prejudice from the existence of the detainer because he "offers no facts stating that he would have bonded out in state court absent the detainer." (*Id*. at 13.) However, Mr. Garcia persuasively counters the Government's argument in his Reply brief.

Specifically, Mr. Garcia provided compelling evidence that his family was gathering funds to post bond when they discovered that "it was no longer possible to bond [Mr. Garcia] out" due to the federal detainer. (Doc. # 48-2 at 2.) Thus, "[b]y waiting to bring Mr. Garcia into federal court and placing a federal hold on him in the meantime, the government assured that Mr. Garcia would be in custody until he was brought into federal custody." (Doc. # 39 at 18.) Notably, the Tenth Circuit has held that "[t]his type of prolonged pretrial incarceration is a well-established type of prejudice that a defendant may rely upon in making a Sixth Amendment speedy trial claim." *Seltzer*, 595 F.3d at 1180. Accordingly, Mr. Garcia has demonstrated that the delay had an adverse impact on "the second most important" interest protected by a defendant's right to a speedy trial. *Id*. Therefore, the fourth *Barker* factor weighs heavily in Mr. Garcia's favor.

In summary, the Government intentionally delayed the initiation of this case by almost two years under circumstances that did not warrant such a delay, given the relative simplicity of the charges at issue. During that period, Mr. Garcia remained in pretrial confinement, and he lacked sufficient information to assert his right to a speedy trial because the federal indictment was sealed. Also, during that period, the Kmart where the alleged shoplifting occurred closed and relevant evidence was lost, which

16

substantially hindered Mr. Garcia's defense. When the harm to Mr. Garcia is balanced against the Government's justification for the delay—i.e., that it would have been inconvenient to prosecute a case in federal court when state proceedings were ongoing—it is apparent that Mr. Garcia's Sixth Amendment right to a speedy trial has been violated.

## IV.   CONCLUSION

Based on the foregoing, the Court ORDERS as follows:

- Mr. Garcia's Motion to Dismiss With Prejudice for Violation of the Sixth Amendment Right to Speedy Trial (Doc. # 39) is GRANTED;
- The Indictment (Doc. # 1) is DISMISSED WITH PREJUDICE;
- All pending motions are DENIED AS MOOT; and
- The motion hearing currently set for July 10, 2020, the final trial preparation conference/change of plea hearing currently set for August 4, 2020, and the trial currently set for August 17, 2020, are VACATED.

DATED: June 25, 2020

BY THE COURT:

_Christine M. Arguello_
CHRISTINE M. ARGUELLO
United States District Judge